

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROBERT PAYNE, D/B/A PAYNES PRODUCTS, PAYNES FORKS, PAYNE TOOLS. <br><br> (Plaintiff) <br><br> -vs- <br><br> NORTHERN TOOL & EQUIPMENT COMPANY, INC.( A Minnesota Company) AND NORTHERN TOOL & EQUIPMENT CATALOG COMPANY ( A Minnesota Company) <br><br> (Defendants) | Cause No.: **2 13 CV 109** |

## COMPLAINT DOR DAMAGES, INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff, Robert Payne, d/b/a Paynes Products, Paynes Forks, and Payne Tools, by counsel, Edward R. Hall, brings this action against Defendants' Northern Tool & Equipment Company, Inc., ("NT") and Northern Tool & Equipment Catalog Company, Inc. ("NTC"), for violations of Section 43 of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A);(b) alleging that Defendants' have engaged in trademark infringement, palming off, false advertising and false designation of origin by continuing to advertise and sell immitation Paynes Products, thus actionale under Section 43 of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A) and 15 U.S.C. § 1125(b). Furthremore, plaintiff alleges breach of contract against NT and NTC and violation of Indiana's Deceptive Practices Act under I.C.§ 24-2-1-13 (1)(A).

## PARTIES INVOLVED

1. Plaintiff Robert Payne, d/b/a Paynes Products, Paynes Forks, and Payne Tools, at all times relevant to this action was, and remains headquartered within the geographical boundaries of the Northern District of Indiana in LaPorte, Indiana

2. Northern Tool and Equiptment Company Inc. is a Minnesota Company.

3. Northeren Tool Catalog Company, Inc. is a Minnesota Company.

## JURISDICTION AND VENUE

4. This case arises uner Section 43 of the Lanham Act 15 U.S.C. § 1125(a)(1)(A) and 15 U.S.C. § 1125(a)(1)(B) for deceptive and unfair marketing, unfair competition, false advertising, false designation of origin and infringement of an unregistered mark through interstate commerce, as such, this Court may properly execute original jurisdiction over the subject matter of this dispute pursuant to 15 U.S.C. § 1121(a).

5. The State law claims of unfair competition and breach of contract and violation of Indiana's Deceptive Practices act are an integral part of the same case and controversey and involve the same operative facts as the federal law claims, and therefore this court has supplemental jurisdiction thereon pursuant to 28 U.S.C. § 1367.

6. Substantial parts of the events giving rise to this claim have arisen within the geographical boundaries of the Northern District of Indiana and therefore this Court is vested with proper venue over the dispute pursuant to 28 § U.S.C. 1391(b)(2).

## FACTUAL ALLEGATIONS

7. Plaintiff is an individual, doing business as Paynes Products, Paynes Forks, and Payne Tools in LaPorte, Indiana.

8. Plaintiff manufacturers several industrial related products but is best known for its "Paynes Forks" invented by the Plaintiff in 2004, that can temporarily transform light-duty and heavy-duty buckets

on tractors into forklifts at a relatively low cost, which provides a high rate of productivity for the consumer.

9. Plaintiff manufactures and distributes all of its Paynes Products at its LaPorte, Indiana headquarters, but sells its products via the Internet nationwide.

10. On or about October 26, 2005 Plaintiff entered into an agreement with the Defendant Northern Tool & Equipment Company to market its products through the Defendants chain of stores. A copy of the "Vendor Agreement" is attached as **Exhibit 1.**

11. On or about January 1, 2007, the Plaintiff entered into an agreement with the Defendant Northern Tool & Ewquitpment Catalog Company, a Minnisota Corporation to include Paynes Forks" in the Defendants Catalogs, which are claimed to be distributed Nationwide through the Defendants Stores and through direct mail. A copy of this agreement is attached as **"Exhibit 2"**

12. All of Plaintiffs Products vary in size and strength, yet all Products bear the mark of Paynes Prodcts, whether it be PaynesForks, or other Paynes Product name.

13. Additionally, Plaintiff produces several other Products that bear the unique mark of Paynes Products and are accompanied by the distinct coloring of black and yellow.

14. On or about August 9, 2012 Plaintiff initiated the requisite filing procedures with the United States Patent and Trademark Office (hefinafter PTO) to obtain a Trademark for Paynes Products as referenced herein.

15. At all relevant times herein, the Plaintiff continued to market its products on its own, exclusive to the agreements with the Defendants.

16. Prior to the termination of the Vendor Agreement, Plaintiff experienced great success with its line of products associated with this claim and had sales from 2005 to 2012 totaling approximately Six Million Five Hundred Thousand dollars, ($6,500,000) through its association with the Defendants.

17. The agreement between Plaintiff and NTC authorized NT and NTC to commercially advertise and

receive orders for Paynes Products through various mediums such as, but not limited to, NT and NTC's website, various on-line vendors (such as e-bay), to include NT and NTC's mail order catalogs.

18. The agreement called for NTC to deduct the sum of three percent (3%) from each invoice for shipped products.

19. Pursuant to the Vendor Agreement, Plaintiff consented to the Defendants using his name for product advertising.

20. The mediums mentioned above were to be distributed and viewed globally, thus attacting customers from all over the United States and globally.

21. Once NT/NTC received an order for Payne Products, NT/NTC would notify Plaintiff, who would then ship the product to the consumer directly, from its headquarters in LaPorte, Indiana.

22. Occasionally, NT/NTC would hold Payne Products inventory, however the customary practice was for Plaintiff to ship its products once Plaintiff received an order from NT/NTC.

23. As a condition of the Vendor Agreement, NT/NTC required Plaintiff to contribute the sum of $3000, to NT/NTC to purportedly cover the expense of Internet advertising.

24. During Plaintiff and NT/NTC's contractual relationship, Plaintiff received approximately 6.5 milliion dollars in amount of orders from NT/NTC, exclusive of any sales the Plaintiff made on his own through other venues.

25. On or about October of 2012 NT/NTC informed Plaintiff that they would no longer advertise or recveive orders for Plaintiff's Products, thus terminating the contract between NT/NTC and Plaintiff.

26. As a result, on or about October of 2012 NT/NTC revoked their right to advertise, receive orders and sell any and all Payne Products.

27. Neither NT or NTC had the authority to manufacture any Payne Products at any time as Plaintiff manufactured the products exclusively at its headquarters in La Porte, Indiana.

28. However, NT/NTC continues to advertise Payne Products through the various mediums listed above

well after the Vendor Agreement had terminated. Copies of these ads are attached and marked as **"Exhibit 3"**.

29. As of the date of this filing, NT/NTC continues to advertise Payne Products through their e-bay marketplace medium as well as their catalogs. This classic "*bait and switch*" scheme uses the name and likeness of Plainitffs products so that the Defendants can then "switch" with an inferior product of the Defendants', which can, will and has caused damages to the reputation of the plaintiff in the marketplace, as well as causing confusion to consumers who are seeking a "Paynes Fork" by responding to the false and deceptive ads of the Defendants.

### COUNT I
### TRADEMARK INFRINGEMENT FALSE DESCRIPTION OF ORIGIN, PALMING OFF AND FALSE ADVERTISING AGAINST ALL DEFENDANTS

Comes now Plaintiff, Plaintiff, by counsel Edward R. Hall, Plaintiff realleges, as if fully set forth, the allegations of Paragraphs 1 through 29 inclusive, of Count One. Plaintiff further alleges the previous mentioned acts of Defendants' constitute unfair competition in the form of palming off and also false designation of origin and false advertisement throughout interstate commerce coupled with an infringement of Plaintiff's right in its above-described Mark.

30. Plaintiff introduced the Payne Products Mark in the marketplace on or about May 01, 2004.

31. Paynes Products is not yet a federally registered mark, however, because Plaintiff was the first to use and introduce Paynes Products into the marketplace, Paynes Products has obtained a protected **unregistered** trademark pursuant to 15 U.S.C. § 1125(a).[1]

32. Plaintiff has relied on the use of the Payne Products Mark so as to distinguish Paynes Products from all other similar products in the marketplace.

---

[1] *Malibu, Inc. v. Reasonover*, 246 F. Supp. 2d 1008, 1011-12 (N.D. Ind. 2003) (fist to use obtains originial ownership regardless of registration).

33. The termination of the Vendor Agreement precluded Defendants' from any further use of the Payne Products Mark for any purposes whatsoever.

34. Defendants' have continued to advertise Paynes Products, even though Defendants' unilaterally terminated the Vendor Agreement.

35. Defendants' terminated the Vendor Agreement with the intention of placing and advertising imitation Paynes Products in interstate commerce at a time when consumers would be unable to differentiate real Paynes Products from fake Paynes Products, thus guaranteeing consumer confusion in the marketplace with respect to Paynes Products.

36. Defendants' actions of using the Paynes Products Mark in connection with their commercial interstate advertising, (both online and mail order catalog), after the termination of the Vendor Agreement is a false designation of origin and false advertising in interstate commerce as Defendants' continue to advertise and sell to consumers, globally, goods falsely containing and/or depicting the Paynes Products Mark, which has caused, and continues to cause a likelihood of confusion, mistake, and deception as to source, sponsorship, affiliation, and/or connection in the minds of the public thus violating Section 43 of the Lanham Act 15 U.S.C. § 1125(a).

37. Additionally, Defendants' continue to advertise Paynes Products (although they are in reality **not Paynes Products)** so as to entice and lead unsuspecting consumers to falsely believe what they are purchasing is Paynes Products, when in reality, the unsuspecting consumer is merely purchasing a good manufactured by the Defendants' that the Defendants' then palmed off[2] as a Paynes Products, thus too demonstrating false designation of origin and in violation of Section 43 of the Lanham Act.

---

[2] See *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315 (1938); *and Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 611 (7th Cir. 1986) (Court defined palming off as "trying to get sales from a competitor by making consumers think that they are dealing with that competitor, when actually they are buying from the passer off").

15 U.S.C. § 1125(a).

38. As a direct and proximate cause of Defendants' deliberate actions, Plaintiff's sales have plummeted since the termination of the vendor agreement whereas Defendants' continue to unjustly enrich themselves at the expense of Plaintiff's goodwill.

39. As a direct and proximate cause of Defendants' deliberate acts, Plaintiff has been damaged by an amount yet to be determined and believes that he will continue to suffer damages caused by Defendants' false descriptions, false designation of origin and false representations made throughout interstate commerce by reason of likelihood that purchasers have, and will continue to be, confused as to the true source and sponsorship of Defendants' imitation Paynes Products, thus causing Plaintiff to suffer extreme losses regarding its business reputation, goodwill, lost sales and lost profits and additional damages discovered in the future.

40. By reason of the foregoing, Plaintiff has been injured in an amount not yet fully determined, and as a result of Defendants' acts of false designation of origin, Plaintiff has suffered and will continue to suffer irreparable harm, unless Defendants' acts of infringement are further enjoined by this Court.

41. Defendants' prior knowledge of Plaintiff's prior use of the Paynes Products Mark and continued unauthorized use after the Vendor Agreement terminated constitutes wonton, willful and complete disregard, entitling Plaintiff to treble damages pursuant to 15 U.S.C. § 1117.

## COUNT II
## UNFAIR COMPETITION BY INFRINGEMENT OF COMMON-LAW RIGHTS AGAINST ALL DEFENDANTS

Comes now Plaintiff by counsel, Edward R. Hall, Plaintiff realleges, as if fully set forth, the allegations of Paragraphs 1 through 41, inclusive, of Count One. Plaintiff further alleges the previous mentioned acts of Defendants' constitute common law unfair competition and an infringement of plaintiff's common-law right in its above-described trademark.

42. The previously mentioned acts of Defendants' constitute unfair competition and an infringement of Plaintiff's common-law rights in its above-described trademark.

43. All sales of alleged Paynes Products subsequent to the termination of the Vendor Agreement were done on behalf of Defendants' **intentionally, without permission from Plaintiff**, thus violating I.C.§ 24-2-1-13 (1)(A).

44. All sales and advertisements depicting Paynes Products subsequent to the termination of the vendor agreement were done on behalf of Defendants', **with the intent** to cause mass consumer confusion, thus violating I.C. § 24-2-1-13 (1)(B).

45. All sales and advertisements subsequent to the termination of the vendor agreement were done on behalf of Defendants', **with the intent** to hide the true source of origin of the imitation forks marketed and or sold by Defendants', thus violating I.C. § 24-2-1-13 (1)(B).

46. Defendants' decision to intentionally advertise and sell imitation Paynes Products to consumers without the permission of Plaintiff entitle Plaintiff to treble damages for both compensatory and actual damages under I.C. §§ 24-2-1-14 (b)(1)(A)(B) as well as reasonable attorneys fees.

## COUNT III

### BREACH OF CONTRACT AGAINST ALL DEFENDANTS'

Comes now Plaintiff by counsel, Edward R. Hall, Plaintiff realleges, as if fully set forth, the allegations of Paragraphs 1 through 46, inclusive, of Count One. Plaintiff further alleges the previous mentioned acts of Defendants' constitute breach of contract.

47. The vendor agreement between the Plaintiff and Defendants' called for the Defendants to turn over any excessive funds once the contract terminated.

48. Defendants' have failed to perform in accordance with the said contract by refusing to surrender excessive funds even though no contract exists.

49. As a result of Defendants' breach, Plaintiff has sustained damages in the sum of approximateley Four Thousand Seven Hundred Dollars ($4,700).

50. Plaintiff has performed all conditions so as to recover its funds held by Defendants' and has not excused Defendants' non-performance.

## COUNT IV

## INJUNCTION AGAINST ALL DEFENDANTS'

Comes now Plaintiff by counsel, Edward R. Hall, Plaintiff realleges, as if fully set forth, the allegations of Paragraphs 1 through 50, inclusive, of Count One. Plaintiff further seeks an injunction against all named Defendants'.

51. As set forth above, the harm caused by Defendants' will continue, thus causing Plaintiff irreparable harm, as such, Plaintiff prays this Court to grant an injunction pursuant to the powers granted it under 15 U.S.C. § 1116, enjoining all Defendants', and its agents, servants, and employees from directly or indirectly using the name Paynes Products or any mark, word, or name similar to Plaintiff's mark which is likely to cause confusion or mistake or to deceive; to include Defendants' payment of all costs of this action along with attorney fees, and for all other just and proper relief in the premises.

## COUNT V JURY DEMAND

Comes now Plaintiff by counsel, Edward R. Hall, Plaintiff realleges, as if fully set forth, the allegations of Paragraphs 1 through 51, inclusive, of Count One. Plaintiff further seeks a jury trial against all named Defendants'.

52. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all issues so triable, exclusive of the motion for emergency injunctive relief.

**WHEREFORE**, the Plaintiff requests that:

   a.   **The Court issue an ermegency injunction,** barring the Defendants from directly or

   indirectly using the name Paynes Products or any mark, word, or name similar to Plaintiff's mark.

b.  Defendants' be required to account to Plaintiff for any and all profits derived by Defendants' from the sale of its goods and for all damages sustained by Plaintiff by reason of the acts of infringement and unfair competition complained of.

c.  That a jury award Plaintiff treble the amount of actual damages suffered by Plaintiff pursuant to 15 U.S.C. § 1117. Or in the alternative, the Court award Plaintiff punitive and exemplary damages by reason of Defendants' fraud and palming off.

d..  Defendants' be required to account and surrender to this Court all items used in connection with Defendants' false advertisement of Paynes Products, to include all items sold as false Paynes Products so as to commence destruction of such goods under I.C. § 24-2-1-14(b)(2).

e.  This Court award Plaintiff treble the amount of profits Defendants' derived from its sale and advertising of Plaintiff's mark, or in the alternative, award Plaintiff treble the amount of actual damages suffered by Plaintiff due to Defendants' intentional use of a counterfeited mark under I.C. §§ 24-2-1-14 (b)(1)(A)(B).

f.  This Court award Plaintiff compensatory damages in the amount of $5,000.00 rightfully owed to Plaintiff under the Vendor Agreement.

g.  Costs of this action be awarded to Plaintiff.

h.  Plaintiff be awarded reasonable attorney's fees; and

I.  The Court grant such other and further relief as it deems just and proper.

Respectfully Submitted,

/s/ Joseph R. May

Joseph R. May
Certified Legal Intern
Joseph.May1@Valpo.edu
Telephone:  219-756-7670
Facsimile:  219-757-7669
Valparaiso University School of Law

/s/ Edward Hall

EDWARD R. HALL, #22040-45
Attorney for Plaintiff
7520 Broadway
Merrillville, Indiana 46410
Telephone:  219-756-7670
Facsimile:  219-757-7669
attyedhall@hotmail.com

## CERTIFICATE OF SERVICE

I certify that on the 28th day of March, 2013, I filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following names listed below and I hearby certify that I have mailed by depositing the same in the Unites States Mail in envelopes properly addressed to the follwing non CM/CEF participants listed below.

*Laura Harris*

**DISTRIBUTION**

Northern Tool & Equipment Catalog Company, Inc.
2800 Southcross Drv W
Burnsville MN 55306
Attn: **Donald L Kotula**, Chief Executive Officer,

Northern Tool & Equipment Company, Inc.
2800 Southcross Drv W, PO Bx 1741
Burnsville MN 55306
Attn: **Donald L Kotula**, Chief Executive Officer

CT Corporation System
36 South Pennsylvania Street
Suite 700
Indianapolis, Indiana 46204
**REGISTERED AGENT**