UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| ROBERT PAYNE | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | CAUSE NO. 2:13-CV-109 JD |
| NORTHERN TOOL & EQUIPMENT COMPANY, INC, et al., | ) | |
| Defendants. | ) | |

## Memorandum Opinion and Order

Northern Tool & Equipment Company, Inc. and Northern Tool & Equipment Catalog Company ("Northern Tool") move this Court to dismiss the complaint filed by Robert Payne d/b/a Paynes Products, Paynes Forks, and Paynes Tools ("Payne") pursuant to Federal Rule of Civil Procedure 12(b)(3). This motion has been fully briefed [DE 11, 18, 20]. For the following reasons, Defendant's motion to dismiss for improper venue [DE 10] is GRANTED in part and DENIED in part.

## Background

Payne manufactures and distributes "Paynes Forks" and other light-industrial tools, and is headquartered in LaPorte, Indiana. [DE 1 ¶¶ 7–8]. A Paynes Fork is an apparatus invented by Payne that attaches to the bucket of a tractor to allow the tractor to function as a forklift. [DE 1 ¶ 8]. Payne's products generally all bear the mark of "Paynes Products," and Payne has applied to the United States Patent and Trademark Office to register that mark as a trademark. [DE 1 ¶¶ 12–14]. In 2005, Payne entered into a Vendor Agreement with Northern Tool pursuant to which Payne agreed to sell certain of its products through Northern Tool's stores, catalogs, and internet presence. [DE 1 ¶¶ 10, 11]. Through its association with Northern Tool, Payne had sales from

2005 to 2012 totaling approximately $6,500,000. [DE 1 ¶ 16]. The Vendor Agreement entitled Northern Tool to three percent of each invoice for shipped products. [DE ¶ 18]. Generally, when Northern Tool would receive an order for Payne products, Northern Tool would contact Payne, who would then ship the product directly to the buyer from Payne's Indiana location. [DE 1 ¶ 21]. Occasionally, Northern Tool would hold Payne's inventory, [DE 1 ¶ 22], though Payne asserts that it never actually shipped inventory directly to Northern Tool. [DE 19 ¶¶ 5–7].

In October 2012, however, Northern Tool informed Payne that it would no longer advertise or take orders for Payne's products, which Payne asserts terminated their Vendor Agreement. [DE 1 ¶ 15]. Payne alleges that even after that time, Northern Tool continued advertising Payne's products through their eBay marketplace website and through their catalogs. [DE 1 ¶ 28]. Payne further alleges that the products Northern Tool marketed after the termination of the agreement, "are in reality **not Paynes Products**," but are "imitation" and "inferior" products that Northern Tool is attempting to palm off as Paynes Products. [DE 1 ¶¶ 29, 35, 37 (emphasis in original)]. Payne also alleges that Northern Tool failed to return certain funds following the termination of the Vendor Agreement, in violation of that agreement. [DE 1 ¶¶ 47–48]. As a result, Payne commenced the present suit by filing a three-count complaint for: (1) trademark infringement under federal law; (2) unfair competition under state law; and (3) breach of contract. [DE 1]. Northern Tool has moved to dismiss the complaint in its entirety on the basis that a forum-selection clause in the Vendor Agreement mandates that each of Payne's claims be brought only in Minnesota courts.

## Analysis

The issue to be decided is whether this Court is the proper venue for this action. Even though Northern Tool does not dispute that this action otherwise satisfies the statutory requirements for proper venue, 28 U.S.C. § 1391(b), it asserts that the forum-selection clause in

the Vendor Agreement mandates that these claims be brought in Minnesota, which would require dismissal (or transfer) of this action. The Seventh Circuit has held that a Rule 12(b)(3) motion is the proper vehicle for advancing this argument.[1] *Cont'l Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 606–07 (7th Cir. 2003) ("A lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss."). "When a defendant moves to dismiss for improper venue pursuant to Rule 12(b)(3), the plaintiff bears the burden of proving that venue is proper." *Buffet Crampon S.A.S. v. Schreiber & Keilwerth, Musikinstrumente GmbH*, No. 3:09-cv-347, 2009 WL 3675807, at *4 (N.D. Ind. Nov. 2, 2009) (citing *Carr v. ABC Fin.*, No. 1:08-cv-318, 2009 WL 1615396, at *1 (S.D. Ind. June 9, 2009)). When deciding a motion to dismiss for improper venue, the Court may consider documents presented outside of the pleadings. *Id.* However, the Court must still take all allegations in the complaint as true, and the Court must resolve all factual disputes in favor of the party contesting the motion to dismiss. *Id.*

Payne raises two threshold arguments in response to the motion to dismiss. The first is that Northern Tool has waived or forfeited its objection to venue by citing authority from outside its preferred forum in its brief in support of the motion to dismiss. However, this argument is neither factually nor legally grounded. Though Northern Tool cited some authority from the Seventh Circuit and elsewhere, it expressly based its argument on Minnesota law. Additionally, Payne cited no authority whatsoever for the curious argument that merely citing authority outside

---

[1] A circuit split currently exists as to the proper vehicle for advancing this argument, *see J.B. Harris, Inc. v. Razei Bar Indus., Ltd.*, 181 F.3d 82, 82 (1999) ("[A] motion to dismiss based on a forum-selection clause is properly founded on [Rule] 12(b)(6) rather than [Rule] 12(b)(3)); *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001) ("[A] 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum."), and the Supreme Court has granted certiorari in a case that may resolve this question, *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 133 S.Ct. 1748 (2013). Though the Court analyzes this motion under Rule 12(b)(3), in accord with Seventh Circuit precedent, the result would be the same if construed as either a Rule 12(b)(6) motion for failure to state a claim or as an affirmative defense.

a party's preferred forum can constitute a waiver of that party's objection to venue. The Court finds that this argument is without merit, and also deems it waived because it has not been developed or supported. *See Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) (holding that a party waived an argument by addressing it cursorily and failing to cite any legal authority in its support). Second, Payne argues that venue properly lies in this district because this Court has personal jurisdiction over Northern Tool. However, Northern Tool does not dispute that this Court has personal jurisdiction over it, and while venue can sometimes be based on the existence of personal jurisdiction, *see* 28 U.S.C. § 1391(b)(1), (b)(3), (c)(2), a forum-selection clause can defeat venue in a judicial district where the statutory requirements for venue have otherwise been met. *See, e.g.*, *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 760 (7th Cir. 2006); *Cont'l Ins. Co.*, 354 F.3d at 606–07. Northern Tool does not dispute that venue would otherwise be proper in this district, but bases its argument solely on the forum-selection clause, so Northern Tool's motion turns on the validity and applicability of the forum-selection clause, and not the existence of personal jurisdiction.

**A.      The Forum-Selection Clause is Enforceable**

Turning to the substance of Northern Tool's arguments, the forum-selection clause in the Vendor Agreement at issue states:

> This agreement shall be deemed to be made under the laws of the State of Minnesota. All interpretations, regardless of the forum, shall be made applying Minnesota law. Vendor hereby irrevocably consents to the jurisdiction of the courts of Minnesota with respect to the adjudication of any case or controversy arising under or in connection with this Agreement, and agrees that such courts will be the proper and only forum in which to adjudicate any such cause or controversy. . . . Vendor hereby irrevocably waives any objection based on any alleged impropriety of venue or personal jurisdiction of such courts and hereby agrees not to institute an action arising under or relating to this Agreement in any other court.

[DE 1-1 at 9]. The validity and construction of a forum-selection clause, "depends on the law of the jurisdiction whose rules will govern the rest of the dispute." *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008). Because the Vendor Agreement chose Minnesota law to govern the agreement as well as a Minnesota judicial forum, Minnesota law governs the analysis of the agreement. *See id.* ("Illinois law determines the validity of the waiver in the contract, for the pact selects Illinois substantive law as well as an Illinois judicial forum."). Payne does not dispute that Minnesota law governs the agreement, but claims for various reasons that the agreement does not apply here. Since the parties have not identified any material difference among the laws in question, the Court need not further consider this question. *See Kochert v. Adagen Medical Intern, Inc.*, 491 F.3d 674, 677 (7th Cir. 2007).

Forum-selection clauses will be enforced, "unless it is shown by the party seeking to avoid the agreement that to do so would be unfair or unreasonable." *Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 890 (Minn. 1982); *see M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (holding that forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances" under federal law). Payne does not suggest that enforcing the forum-selection clause here would be unfair or unreasonable. [DE 18 at 3 ("Plaintiff concedes that the forum-selection clause within the Vendor Agreement, if the contract was still in force, would dictate where this case should be litigated.")]. Rather, Payne's only defense against the enforceability of the provision is that it should not survive the termination of the contract.

However, whether or not the Vendor Agreement was terminated is inconsequential to whether the forum-selection clause is enforceable here. Courts routinely enforce forum-selection clauses after a contract is terminated unless the terms of the contract itself indicate otherwise:

5

"In the absence of contractual language expressly or implicitly indicating the contrary, a forum selection clause survives termination of the contract. . . . The intent of the parties as to the continued applicability of a forum selection clause controls." *Advent Electronics, Inc. v. Samsung Semiconductor, Inc.*, 709 F. Supp. 843, 847 (N.D. Ill. 1989); *see also Nolde Bros., Inc. v. Local No. 358 Bakery & Confectionery Workers Union*, 430 U.S. 243, 250–51 (1977) (holding that the termination of a contract does not extinguish the contract's arbitration clause); *Claber, S.p.A. v. Lowe's Cos., Inc.*, No. 98 C 4760, 1999 WL 166974, at *3 (N.D. Ill. Mar. 23, 1999) ("Whether the contract was terminated . . . is irrelevant because forum selection clauses survive termination of a contract."). Here, the provision states that Payne, "*irrevocably* consents to the jurisdiction of the courts of Minnesota," and, "*irrevocably* waives any objection based on any alleged impropriety of venue or personal jurisdiction of such courts." [DE 1-1 at 9 (emphasis added)]. This implies that the provision is intended to extend beyond the life of the contract, and at the very least, neither expressly nor implicitly indicates an intent for the provision terminate along with the contract. The clause is therefore enforceable regardless of whether the agreement is still in effect, though that is not to say it is necessarily applicable to Payne's specific claims. The authorities Payne cites are not to the contrary, as they do not address whether forum-selection clauses terminate upon the termination of the agreement, but whether the claims at issue arose under the versions of the agreements that contained the forum-selection clauses. Thus, though Payne frames its argument as that the termination of the contract actually terminates the effect of the forum-selection clause, its arguments are better understood as arguing that the post-termination conduct at issue here did not actually arise under the contract. The Court therefore turns next to whether Payne's claims fall within the scope of the forum-selection clause.

**B.     Only the Breach of Contract Claim Arises Under or In Connection With the Vendor Agreement and Is Subject to its Forum-Selection Clause**

The forum-selection clause in the Vendor Agreement applies to all cases or controversies "arising under or in connection with this Agreement." [DE 1-1 at 9]. Because the clause is stated in mandatory terms—stating that "[Minnesota] courts will be the proper and *only* forum," and that Payne "agrees not to institute an action . . . in any other court"—any such claims brought outside of Minnesota courts would require dismissal. *See Muzumdar*, 438 F.3d at 762 ("We have found such mandatory language to require enforcing a forum selection clause. We have said that where venue is specified with mandatory or obligatory language, the clause will be enforced . . . ."). The complaint at issue presents three separate claims: (1) trademark infringement under federal law; (2) unfair competition under state law; and (3) breach of contract. The first two claims are essentially based on the same facts and assert that Northern Tool used the Paynes Products mark to advertise and sell products that *are not* in fact Payne's products. The third claim is distinct and relates only to Northern Tool's alleged failure to perform certain obligations under the Vendor Agreement.

There is no question that the breach of contract count "arises under or in connection with" the Vendor Agreement, as it is expressly founded on responsibilities allegedly imposed by the agreement. Payne conceded as much in its response to the motion to dismiss. Additionally, given the distinct nature of this claim, as compared to the trademark infringement claim over which this Court has original jurisdiction, it is unclear whether this claim would even fall within the Court's supplemental jurisdiction. However, since this claim clearly arises under the Vendor

7

Agreement and is therefore subject to the forum-selection clause, this count should be dismissed for improper venue.[2]

Counts I and II require closer attention, however. Initially, the fact that these claims are not framed as breaches of the contract is not dispositive as to whether the forum-selection clause applies. "[A] plaintiff cannot defeat a forum-selection clause 'by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit.'" *Kochert*, 491 F.3d at 679 (quoting *Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004)). Thus, the fact that the claims allege violations of federal law and state common law do not mean that they do not "arise under" the Vendor Agreement. As the Seventh Circuit has explained:

> [T]he existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes.

*Am. Patriot*, 364 F.3d at 889.

In arguing to the contrary, Payne cites Justice Holmes' statement that, "a suit arises under the law that creates the cause of action." *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). However, this statement was made in an entirely different context—the statutory scope of federal courts' subject matter jurisdiction. Even in that context, this construction is recognized as "an inclusive, though not an exclusive, definition." *Int'l Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d 912, 916 (7th Cir. 2001). As the Supreme Court recognized in *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463

---

[2] Neither party has requested that the Court transfer claims subject to the forum selection clause instead of dismissing them without prejudice. Because the statute of limitations on this claim has not yet run, Minn. Stat. § 541.05 subd. 1(1) (stating that the statute of limitations for breach of contract is six years), Payne will not be prejudiced by dismissing this claim without prejudice rather than transferring it, so dismissal is appropriate.

U.S. 1, 13 (1983), "Even though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." This is a decidedly broader definition than Justice Holmes'.

However, just because the parties have entered an agreement containing a forum-selection clause does not mean that any potential dispute they may encounter will be subject to that clause, even where the dispute would not have occurred but for the agreement. In analyzing a similar forum-selection clause, the Seventh Circuit addressed this issue by posing a hypothetical: "Let us suppose that while inspecting [Plaintiff's] facilities, a manager of [Defendant] stepped on a baby rattle and fell. Would the ensuing tort litigation go to the [chosen forum] just because, but for the distribution agreement, none of [Defendant's] employees would have been on [Plaintiff's] premises?" *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 602 (7th Cir. 1994). The court interpreted the clause by stating that "all disputes the resolution of which arguably depend on the construction of an agreement 'arise out of' that agreement" for purposes of a forum-selection clause. *Id.* at 603.

In applying that standard, Northern Tool relies heavily on *Omron*, 28 F.3d 600, and *Buffet Crampon*, 2009 WL 3675807, to argue that Payne's trademark infringement and unfair competition claims arise under the Vendor Agreement. Both of those cases are similar to this case in many respects, as both involved trademark infringement claims brought after the termination of distribution agreements containing forum-selection clauses. In *Omron*, the defendant had a substantial amount of inventory of strollers left over after the termination of the distributorship agreement. 28 F.3d at 601. The defendant pasted new labels on the strollers identifying their new reseller, but the plaintiff brought a trademark infringement action because

9

the plaintiff's trademarks were still visible on the products. *Id.* The Seventh Circuit enforced the forum-selection clause, holding that because the dispute would require the court to interpret implicit terms in the contract as to how to dispose of the remaining inventory, the action arose under the contract, even though the claim was for post-termination trademark infringement. *Id.* at 602. *Buffet Crampon* similarly involved a trademark dispute prompted by a party's attempt to dispose of materials produced during the course of the agreement. 2009 WL 3675807, at *7. Noting that analyzing the claims at issue would "require an interpretation of the express and implied terms of" the agreement containing the forum-selection clause, the court held that the claim arose under the contract and was subject to the clause. *Id.*

Under Northern Tool's theory of the case, this case would be on all fours with *Omron* and *Buffet Crampon*. They claim that the Paynes Products they marketed after the termination of the Vendor Agreement were simply inventory they had on hand from customers who had returned products directly to them from sales made pursuant to the Vendor Agreement, and that the Vendor Agreement authorized them to sell those products. Because the Court would have to interpret the Vendor Agreement to determine the parties' rights relative to those sales, the trademark and unfair competition claims would necessarily arise under the Vendor Agreement and be subject to its forum-selection clause, they argue.

If those were actually the allegations underlying Payne's claims, then the claims would indeed arise under the Vendor Agreement. However, Payne's allegations are that Northern Tool was selling products that *were not* Paynes Products, and that had no connection to Payne or the Vendor Agreement. [DE 1 ¶ 37]. Payne alleges that Northern Tool was actually manufacturing the products on its own, and then using the Paynes Products mark to palm those products off on unsuspecting customers. *Id.*

Based on these specific allegations, which for purposes of this motion the Court must accept, resolving the claims will not require an interpretation of the express or implied terms of the Vendor Agreement. If the facts ultimately support Northern Tool's theory, then there will be no trademark infringement or unfair competition in the first place, regardless of whether the agreement would otherwise permit such activity, and the claims would fail on factual grounds. If the facts ultimately support Payne's allegations, however, the Vendor Agreement would not provide Northern Tool with any protection—Northern Tool has not suggested that any express or implied term in the Vendor Agreement gives it the right to use the Paynes Products trademark to market products that are not and never were Payne's products and that were not produced in connection with the agreement. In either case, resolving this dispute will not require interpretation of the Vendor Agreement. *See Andersen v. Res-Care, Inc.*, No. 1:05-cv-391, 2006 WL 842394, at *4 (N.D. Ind. Mar. 27, 2006) (holding that a forum-selection clause contained in an employment agreement did not apply to an employee's claim under the Americans with Disabilities Act where the "Employment Agreement, and its terms, are simply not relevant to the Plaintiff's ADA claim"). This result would be the same even under the "but for" test that the court in *Crampon* rejected as over-inclusive, since Northern Tool could manufacture its own products and palm them off as Payne's even without the Vendor Agreement. Therefore, these claims do not arise under, in connection with, or in relation to the contract, so the forum-selection clause does not apply. As a result, Northern Tool's motion to dismiss must be denied as to these claims.

## **Conclusion**

For the reasons stated above, Defendants' motion to dismiss for improper venue is GRANTED in part and DENIED IN PART. Count III, alleging breach of contract, is DISMISSED WITHOUT PREJUDICE. Plaintiff may proceed in this action on Counts I and II.

SO ORDERED.

ENTERED:   November 12, 2013

                                        /s/ JON E. DEGUILIO
                                    Judge
                                    United States District Court